IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| vs. | * | CRIMINAL NO. 6:09-CR-85 |
| | * | Judge Schneider |
| JASPER OGBONNA (1), | * | |
| ANTHONY NNADI (2), | * | |
| KEVIN ONWUDIWE (3), | * | |
| TONY AHI a/k/a "MAYOR" (4), and | * | |
| EMMANUEL GABRIELS a/k/a | * | |
| "TALIBAN" a/k/a "T-BANNY" (5) | * | |

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment:

1.      The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of sixty-five and some persons under the age of sixty-five who were blind or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a public plan affecting commerce under which medical benefits, items, and services are provided to individuals and under which individuals and entities who are providing medical benefits, items, or services may obtain payments.

1

3.     The Medicare program included a voluntary supplemental insurance benefit known as Part B, which is funded from insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury.  Part B of the Medicare program covered most out-patient services, including durable medical equipment ("DME").  DME is equipment that may be used in the home on a repeated basis for a medical purpose.  DME suppliers who met certain criteria could obtain Medicare provider numbers, which allowed them to submit claims directly to Medicare seeking reimbursement for the cost of DME supplied to eligible Medicare beneficiaries.

4.     DME companies were prohibited from receiving payments for items or services:

   a.   That were not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member or which were not reasonable and necessary for the prevention of illness,

   b.   For which the individual furnished such items or services had no legal obligation to pay and which no other person had a legal obligation to provide or pay for,

   c.   That constituted personal comfort items, or

   d.   Where such items were for custodial care.

5.     It was the obligation of the health care providers, including DME companies, to assure that services or items:

   a.   Were provided economically and only when, and to the extent, medically necessary, and

   b.   Were supported by evidence of medical necessity.

6.     The United States provided reimbursement for Medicare claims through CMS.  CMS contracts with private insurance organizations, referred to as "carriers" under Part B, to receive, adjudicate, and pay Medicare claims submitted by approved and participating health care providers. These carriers were required to administer the Medicare program according to regulations

established by CMS. There were four regional carriers, known as Durable Medical Equipment Regional Carriers ("DMERCs"), who were responsible for processing claims for DME reimbursement.

7.      Medicare Part B covered services must be submitted by a provider or supplier to the appropriate regional carrier based upon the beneficiary's state of residence. Since June 2007, Part B has been administered in Texas by CIGNA Government Services, LLC ("CIGNA"), which, pursuant to contract with HHS, served as a fiscal intermediary to receive, adjudicate, and pay Medicare Part B claims submitted to it by suppliers of DME. Prior to CIGNA, Part B was administered in Texas by Palmetto Government Benefits Administrators (Palmetto GBA), a subsidiary of Blue Cross Blue Shield of South Carolina. Medicare Part B reimbursed suppliers directly for the cost of equipment provided to eligible Medicare beneficiaries provided that such equipment was ordered by a licensed physician who certified that the equipment was medically necessary for the beneficiary. Such physician certifications could be in the form of a prescription or a certificate of medical necessity ("CMN"). A CMN was a form created by Medicare which was valid only if signed by a physician, and certified to the medical necessity of some types of DME. Medicare regulations required DME suppliers to maintain these prescriptions and certificates of medical necessity on file at their companies.

8.      In order to become a supplier authorized to bill Medicare for DME, a company was required to submit a Medicare Enrollment Application to CMS via the National Supplier Clearinghouse ("NSC"). The NSC contracted with Medicare to receive, evaluate, and approve or deny Medicare Enrollment Applications. In this application, potential suppliers promised to comply with all Medicare-related laws and regulations. Only after the NSC approved an application and provided a company with a Medicare supplier number may a company bill Medicare for benefits, items, and services provided to Medicare beneficiaries.

3

9.     In order to receive payment from Medicare, the supplier was required to submit a health insurance claim form ("Form HCFA 1500") to Medicare. The claim form was required to state, among other things, the beneficiary's name and health insurance claim number ("HICN"), the Healthcare Common Procedural Code Systems ("HCPCS") code corresponding to the DME provided to the Medicare beneficiary, the date the DME was provided, the charge for the DME, and the name and Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI") number of the referring physician or other health care provider who had ordered or prescribed the services. All information contained in the form must be true, accurate, and complete. The claim form could be submitted in hard copy or electronically.

10.     Medicare had specific guidelines for the billing and coverage of durable medical equipment and supplies. These guidelines were published by Palmetto GBA and CIGNA in the *Medicare Region C DMEPOS Supplier Manual.* This manual was provided to all new DME suppliers and was updated four times a year. The manual was made available to Medicare suppliers in both computer CD-ROM and paper format.  It was also publically-available and accessible on the Internet.

11.     DME suppliers signed an agreement with Medicare in which they stated that they were familiar with Medicare's billing requirements and in which they promised not to submit false or fraudulent claims. Medicare required DME suppliers to retain records for a period of six years and three months.

12.     A supplier could contract with a billing company to prepare and transmit claims to Medicare on its behalf. All payments made by Medicare were made to a provider in the form of a United States Treasury check or a pre-arranged direct deposit into the provider's bank account.

13.     Matrix Medical Equipment & Supplies, Inc. ("Matrix"), was a West Virginia corporation, doing business at 1621 Pennsylvania Avenue, Weirton, West Virginia.   It was

4

incorporated on or about May 23, 2006, and was dissolved on or about December 1, 2008.  It was purportedly in the business of supplying DME to Medicare beneficiaries.

14.     Defendant **JASPER OGBONNA** managed and operated Matrix.

15.     Nicco Medical Services, LLC ("Nicco"), was an Arkansas corporation, doing business at 400 West Capitol Avenue, Suite 1700, Little Rock, Arkansas, from on or about August 11, 2005, until on or about October 25, 2006, when Nicco's place of business changed to 900 South Shackleford Road, Suite 300, Little Rock, Arkansas.  Nicco was incorporated on or about August 11, 2005.  It was purportedly in the business of supplying DME to Medicare beneficiaries.

16.     Defendant **ANTHONY NNADI** owned, managed, and operated Nicco.

17.     Defendant **KEVIN ONWUDIWE** assisted **ANTHONY NNADI** in the operation of Nicco beginning in or around August 2005 until on or about December 2006.

18.     Defendant **TONY AHI a/k/a "MAYOR"** assisted **ANTHONY NNADI** in the operation of Nicco beginning in or around December 2006 and delivered DME for various DME suppliers.

19.     Defendant **EMMANUEL GABRIELS a/k/a "TALIBAN" a/k/a "T-BANNY"** delivered DME for various DME suppliers.

### COUNT 1
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     From in or around August 2005, and continuing through in or around April 2008, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants,

JASPER OGBONNA, ANTHONY NNADI, KEVIN ONWUDIWE, TONY AHI a/k/a
OBINNA AHI a/k/a "MAYOR", and EMMANUEL GABRIELS a/k/a "TALIBAN"
a/k/a "T-BANNY",

did knowingly and willfully combine, conspire, confederate and agree with others, known and
unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute
a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in
Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially
false and fraudulent pretenses, representations, and promises, money and property owned by, and
under the custody and control of, said health care benefit program, in connection with the delivery
of and payment for health care benefits, items, and services.

### Purpose of the Conspiracy

3.     It was the general purpose of the conspiracy for the defendants and their co-
conspirators to unlawfully obtain money from Medicare through misrepresentations and violations
of Medicare rules.  To this end, the defendants and their co-conspirators would, among other things,
(a) submit or cause the submission of false and fraudulent claims to Medicare; and (b) conceal the
submission of false and fraudulent claims to Medicare.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to
accomplish the object and purpose of the conspiracy included, among others, the following:

4.     To achieve the goals of the conspiracy, the defendants and their co-conspirators
devised and carried out a scheme to defraud Medicare through the marketing of "ortho kits" or
"artho kits," which primarily consisted of a bag of orthotic items, including braces, wraps, and
supports, and a heat lamp.  The defendants and their co-conspirators supplied beneficiaries with kits
which were not prescribed or otherwise authorized by a physician, supplied beneficiaries with kits

which were not medically necessary, supplied beneficiaries with kits which were unwanted, and billed for supplies for which they were not entitled to reimbursement. Claims were submitted by the defendants and their co-conspirators for approximately 509 beneficiaries located primarily in Texas and Louisiana. By means of fraudulent billing practices, the defendants and their co-conspirators unlawfully obtained more than $1,095,000 from Medicare.

5.    In devising a scheme to defraud Medicare, **JASPER OGBONNA, ANTHONY NNADI, KEVIN ONWUDIWE** and their co-conspirators, entered into arrangements in which they agreed to divide the respective roles and responsibilities within the conspiracy, outlined as follows:

- Patients would be identified and the personal information of such patients would be obtained by co-conspirators;

- Durable medical equipment would be provided by co-conspirators;

- Deliveries would be made by **TONY AHI, EMMANUEL GABRIELS,** and other co-conspirators;

- Billing would be done by co-conspirators using Medicare provider numbers belonging to Matrix, Nicco, and other companies;

- **JASPER OGBONNA, ANTHONY NNADI, KEVIN ONWUDIWE** and their co-conspirators would set up businesses for the purpose of providing DME, maintain valid Medicare provider numbers, maintain bank accounts for receiving payment from Medicare, and transfer 75% of the amount paid by Medicare to co-conspirators;

- In exchange for payment, co-conspirators would send patient files containing patient and prescribing physician information to **JASPER OGBONNA, ANTHONY NNADI,** and **KEVIN ONWUDIWE.**

## THE NICCO ARRANGEMENT

6.      **KEVIN ONWUDIWE** wished to open a DME company but due to increasing scrutiny by law enforcement in the Houston, Texas, area, he relocated to Little Rock, Arkansas, and sought out **ANTHONY NNADI** to be his front man and run the company.

7.      **ANTHONY NNADI**, with the assistance of **KEVIN ONWUDIWE**, obtained ownership and control of Nicco.

8.      **ANTHONY NNADI**, initially with the assistance of **KEVIN ONWUDIWE** and later with the assistance of **TONY AHI**, controlled the day-to-day operation of Nicco.

9.      To conceal **KEVIN ONWUDIWE's** interest in Nicco, **ANTHONY NNADI** was designated as the authorized official, owner, and representative of Nicco on documents provided to Medicare.

10.     **KEVIN ONWUDIWE** proposed engaging in the 75/25 split arrangement outlined above with a co-conspirator.  **ANTHONY NNADI** agreed with such a proposal, and **KEVIN ONWUDIWE** and **ANTHONY NNADI** discussed the terms of the agreement with the co-conspirator, ultimately agreeing to the arrangement.

11.     **ANTHONY NNADI** would maintain a valid Medicare provider number for Nicco for co-conspirators to use in submitting Medicare claims for DME which was not prescribed or otherwise authorized by a physician and which was medically unnecessary.

12.     **ANTHONY NNADI** maintained a bank account for the purpose of receiving, concealing, and disbursing the Medicare payments that were made as a result of the fraudulent claims.

13.     Co-conspirators, commonly referred to as marketers or recruiters, improperly acquired personal information, including names and HICNs, from Medicare beneficiaries residing in the Eastern District of Texas and elsewhere.

14.     Co-conspirators forged physician's signatures on prescriptions and CMNs purporting to order DME; altered prescriptions and CMNs after they had been signed by physicians such that the documents purported to order DME; and fraudulently obtained prescriptions and CMNs purporting to order DME, when the physicians had not prescribed or ordered the DME and had not authorized Nicco to use their names, UPINs, and NPIs in conjunction with Medicare claims.

15.     **TONY AHI, EMMANUEL GABRIELS,** and other co-conspirators delivered DME items, specifically "ortho kits," to beneficiaries residing in the Eastern District of Texas and elsewhere. **EMMANUEL GABRIELS** and other co-conspirators forged patients' signatures on delivery tickets and signed delivery tickets for deceased patients.

16.     Co-conspirators submitted false and fraudulent claims for approximately $693,000 to Medicare using Nicco's Medicare provider number for DME which was neither prescribed nor otherwise authorized by a physician nor which was medically necessary.

17.     Based on these false and fraudulent claims, reimbursement of approximately $251,000 was transmitted electronically by Medicare to Nicco's operating account which was controlled by **ANTHONY NNADI.**

18.     In exchange for patient files, purchasing and delivering "ortho kits," and submitting bills to Medicare, **ANTHONY NNADI** transferred by wire approximately 43% of the proceeds received from Medicare to co-conspirators.

19.     Upon receipt of such wire transfers and in return for such wire transfers, co-conspirators would deliver to **ANTHONY NNADI** packages containing fraudulently produced and obtained files containing prescriptions and CMNs, which included patient and prescribing physician information.

20.   **ANTHONY NNADI** maintained such fraudulently produced and unlawfully obtained files in the Nicco facility and falsely represented that such files were authentic patient files.

21.   **ANTHONY NNADI** and other co-conspirators obtained control of the funds paid to Nicco and diverted these monies for their personal use and benefit, as well as that of others.

## THE MATRIX ARRANGEMENT

22.   Co-conspirators, with the assistance of **JASPER OGBONNA**, obtained ownership and control of Matrix.

23.   **JASPER OGBONNA** controlled the day-to-day operation of Matrix.

24.   To conceal **JASPER OGBONNA's** control of Matrix, a co-conspirator was designated as the authorized official, owner, and representative of Matrix on documents provided to Medicare.

25.   **JASPER OGBONNA** entered into the 75/25 split arrangement outlined above with a co-conspirator.

26.   **JASPER OGBONNA** would maintain a valid Medicare provider number for Matrix for co-conspirators to use in submitting Medicare claims for DME which was not prescribed or otherwise authorized by a physician and which was medically unnecessary.

27.   **JASPER OGBONNA** maintained a bank account for the purpose of receiving, concealing, and disbursing the Medicare payments that were made as a result of the fraudulent claims.

28.   Co-conspirators, commonly referred to as marketers or recruiters, improperly acquired personal information, including names and HICNs, from Medicare beneficiaries residing in the Eastern District of Texas and elsewhere.

29.   Co-conspirators forged physician's signatures on prescriptions and CMNs purporting to order DME; altered prescriptions and CMNs after they had been signed by physicians such that the documents purported to order DME; and fraudulently obtained prescriptions and CMNs purporting to order DME, when the physicians had not prescribed or ordered the DME and had not authorized Matrix to use their names, UPINs, and NPIs in conjunction with Medicare claims.

30.   **TONY AHI, EMMANUEL GABRIELS,** and other co-conspirators delivered DME items, specifically "ortho kits," to beneficiaries residing in the Eastern District of Texas and elsewhere. **EMMANUEL GABRIELS** and other co-conspirators forged patients' signatures on delivery tickets and signed delivery tickets for deceased patients.

31.   Co-conspirators submitted false and fraudulent claims for approximately $2,152,000 to Medicare using Matrix's Medicare provider number for the cost of DME which was neither prescribed nor otherwise authorized by a physician nor which was medically necessary.

32.   Based on these false and fraudulent claims, reimbursement of approximately $845,000 was transmitted electronically by Medicare to Matrix's operating account which was controlled by **JASPER OGBONNA.**

33.   In exchange for patient files, purchasing and delivering "ortho kits," and submitting bills to Medicare, **JASPER OGBONNA** transferred by wire approximately 69% of the proceeds received from Medicare to co-conspirators.

34.   Upon receipt of such wire transfers and in return for such wire transfers, co-conspirators would mail to **JASPER OGBONNA,** via Federal Express, packages containing fraudulently produced and obtained files containing prescriptions and CMNs, which included patient and prescribing physician information.

35.    **JASPER OGBONNA** maintained such fraudulently produced and unlawfully obtained files in the Matrix facility and falsely represented that such files were authentic patient files.

36.    **JASPER OGBONNA** and other co-conspirators obtained control of the funds paid to Matrix and diverted these monies for their personal use and benefit, as well as that of others.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-8
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

1.    The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.    From in or around June 2007, and continuing through in or around April 2008, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendant,

### JASPER OGBONNA,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and wilfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

3.    It was the general purpose of the scheme and artifice for the defendant and his co-conspirators to unlawfully obtain money from Medicare through misrepresentations and violations of Medicare rules. To this end, the defendant and his co-conspirators would, among other things,

(a) submit and cause the submission of false and fraudulent claims to Medicare; and (b) conceal the submission of false and fraudulent claims to Medicare.

### The Scheme and Artifice

4.     Paragraphs 4, 5, and 22 through 36 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

5.     On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant and his co-conspirators, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and wilfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of said health care benefit program, in that they submitted to Medicare claims for approximately the identified dollar amounts, and represented that, on or about the identified dates of service, Matrix provided the identified DME to the identified beneficiaries pursuant to physicians' orders or prescriptions:

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|-------|---------------------|------------------------|----------------------|-------|-------------------------|---------------------|
| 2 | J.A. | 11/05/07 | 11/08/2007 | L0462 | TLSO 3Mod sacro-scap pre | $5,850.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |

13

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|-------|---------------------|----------------------|---------------------|------|------|--------------------|
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | L1902 | Afo ankle gauntlet | |
| | | | | L1902 | Afo ankle gauntlet | |
| 3 | A.B. | 11/05/07 | 11/08/07 | L0462 | TLSO 3Mod sacro-scap pre | $5,850.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3984 | Upper ext fx orthosis wrist | |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | L1902 | Afo ankle gauntlet | |
| | | | | L1902 | Afo ankle gauntlet | |
| 4 | L.E. | 08/07/07 | 08/09/07 | L0462 | TLSO 3Mod sacro-scap pre | $6,550.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3984 | Upper ext fx orthosis wrist | |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L3760 | EO with joint, Prefabricated | |
| | | | | L3760 | EO with joint, Prefabricated | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | E0650 | Pneuma compresor non-segment | |
| | | | | E0671 | Pressure pneum appl full leg | |
| 5 | P.E. | 10/09/07 | 10/10/07 | L0462 | TLSO 3Mod sacro-scap pre | $4,850.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L0462 | TLSO 3Mod sacro-scap pre | |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L2795 | Knee control full kneecap | |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L2795 | Knee control full kneecap | |
| | | | | E0205 | Heat lamp with stand | |
| 6 | J.I. | 08/14/07 | 08/17/07 | L0462 | TLSO 3Mod sacro-scap pre | $4,850.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | E0205 | Heat lamp with stand | |
| 7 | J.J. | 10/09/07 | 10/10/07 | L0462 | TLSO 3Mod sacro-scap pre | $4,850.00 |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | E0205 | Heat lamp with stand | |
| 8 | G.M. | 10/09/07 | 10/10/07 | L0462 | TLSO 3Mod sacro-scap pre | $4,850.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3984 | Upper ext fx orthosis wrist | |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L3984 | Upper ext fx orthosis wrist | |
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | L2795 | Knee control full kneecap | |
| | | | | E0205 | Heat lamp with stand | |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 9-13
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

1.      The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.      From in or around August 2005, and continuing through in or around December 2006, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants,

**ANTHONY NNADI and
KEVIN ONWUDIWE,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and wilfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme and Artifice

3.      It was the general purpose of the scheme and artifice for the defendants and their co-conspirators to unlawfully obtain money from Medicare through misrepresentations and violations of Medicare rules.  To this end, the defendants and their co-conspirators would, among other things, (a) submit and cause the submission of false and fraudulent claims to Medicare; and (b) conceal the submission of false and fraudulent claims to Medicare.

### The Scheme and Artifice

4.      Paragraphs 4 through 21 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

### Acts in Execution of the Scheme and Artifice

5.      On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendants and their co-conspirators, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and wilfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of

said health care benefit program, in that they submitted to Medicare claims for approximately the identified dollar amounts, and represented that, on or about the identified dates of service, Nicco provided the identified DME to the identified beneficiaries pursuant to physicians' orders or prescriptions:

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| 9 | L.C. | 11/10/06 | 11/24/06 | L0462 | TLSO 3Mod sacro-scap pre | $5,150.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3810 | Whfo thumb abduction bar | |
| | | | | L3810 | Whfo thumb abduction bar | |
| | | | | E0217 | Water circ heat pad w pump | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| 10 | S.J. | 11/10/06 | 11/24/06 | L0462 | TLSO 3Mod sacro-scap pre | $4,950.00 |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3810 | Whfo thumb abduction bar | |
| | | | | L3810 | Whfo thumb abduction bar | |
| | | | | E0217 | Water circ heat pad w pump | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| 11 | F.P. | 11/10/06 | 11/24/06 | L0462 | TLSO 3Mod sacro-scap pre | $4,950.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3810 | Whfo thumb abduction bar | |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L3810 | Whfo thumb abduction bar | |
| | | | | E0217 | Water circ heat pad w pump | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| 12 | B.S. | 9/8/06 | 9/25/06 | L0462 | TLSO 3Mod sacro-scap pre | $3,500.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | E0217 | Water circ heat pad w pump | |
| | | | | E0205 | Heat lamp with stand | |
| 13 | S.W. | 9/8/06 | 9/27/06 | L0462 | TLSO 3Mod sacro-scap pre | $7,000.00 |
| | | | | L1832 | KO adj jnt pos rigid support | |

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|---|---|---|---|---|---|---|
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L0462 | TLSO 3Mod sacro-scap pre | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | E0217 | Water circ heat pad with pump | |
| | | | | E0205 | Heat lamp with stand | |
| | | | | E0217 | Water circ heat pad with pump | |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 14-15
### Health Care Fraud
### (18 U.S.C. §§ 1347 and 2)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     From in or around December 2006, and continuing through in or around February 2009, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendant,

### ANTHONY NNADI,

25

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and wilfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the control of Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Scheme and Artifice

3.    It was the general purpose of the scheme and artifice for the defendant to unlawfully obtain money from Medicare through misrepresentations and violations of Medicare rules.  To this end, the defendant would, among other things, (a) submit and cause the submission of false and fraudulent claims to Medicare; and (b) conceal the submission of false and fraudulent claims to Medicare.

## The Scheme and Artifice

4.    The defendant devised and carried out a scheme and artifice to defraud Medicare through the marketing of "ortho kits" or "artho kits," which primarily consisted of a bag of orthotic items, including braces, wraps, and supports, and a heat lamp.  The defendants supplied beneficiaries with kits which were not prescribed or otherwise authorized by a physician, supplied beneficiaries with kits which were not medically necessary, supplied beneficiaries with kits which were unwanted, and billed for supplies for which they were not entitled to reimbursement.  The defendant submitted claims for approximately 208 beneficiaries located primarily in Texas and Louisiana.  By means of fraudulent billing practices, the defendant unlawfully obtained more than $352,000 from Medicare.

5.      As part of the scheme and artifice, **ANTHONY NNADI** knowingly submitted and caused Nicco to submit claims in order to obtain Medicare payments, falsely representing that certain physicians had prescribed or ordered DME when the physicians had not prescribed or ordered the DME and had not authorized **ANTHONY NNADI** to use their names, UPINs, or NPIs in conjunctions with such claims.

6.      As part of the scheme and artifice, **ANTHONY NNADI** prepared documents and caused documents to be prepared that falsely represented that physicians had prescribed or ordered DME for certain Medicare beneficiaries when the physicians had not seen the beneficiaries and had not prescribed or ordered the DME.

7.      As part of the scheme and artifice, **ANTHONY NNADI** obtained approximately $352,000 in payments from Medicare.

8.      As part of the scheme and artifice, **ANTHONY NNADI** submitted and caused to be submitted numerous fraudulent claims for Medicare beneficiaries.

## Acts in Execution of the Scheme and Artifice

9.      On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and wilfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program, that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by and under the custody and control of said health care benefit program, in that they submitted to Medicare claims for approximately the identified dollar amounts, and represented that, on or about the identified dates of service, Nicco provided the identified DME to the identified beneficiaries pursuant to physicians' orders or prescriptions:

| Count | Medicare Beneficiary | Purported Service Date | Purported Claim Date | HCPCS Code – DME | | Total Billed Amount |
|-------|---------------------|------------------------|----------------------|------|------|---------------------|
| 14 | E.P. | 08/02/07 | 08/06/07 | L0631 | LSO sag-coro rigid frame pre | $3,577.77 |
| | | | | L3652 | Prefab dbl shoulder orthosis | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| 15 | A.T. | 08/18/08 | 08/19/08 | L0637 | LSO sag-coronal panel prefab | $3,390.63 |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L1832 | KO adj jnt pos rigid support | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L3760 | EO withjoint, Prefabricated | |
| | | | | L1904 | Afo molded ankle gauntlet | |
| | | | | L1904 | Afo molded ankle gauntlet | |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS 16-22
### Aggravated Identity Theft
### (18 U.S.C. §§ 1028A and 2)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant,

### JASPER OGBONNA,

did without lawful authority, knowingly transfer, possess, and use, means of identification of other persons, that is, Medicare beneficiaries' names, HICNs, and Social Security numbers, during in and relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, health care fraud, a violation of 18 U.S.C. §1347:

| Count | Medicare Beneficiary | HICN (last 4 digits) | SS#s (last 4 digits) | Purported Service Date | Purported Claim Date | Billed Amount |
|-------|---------------------|---------------------|---------------------|----------------------|---------------------|---------------|
| 16 | J.A. | 394A | 6394 | 11/05/07 | 11/08/07 | $5,850.00 |
| 17 | A.B. | 068A | 8068 | 11/05/07 | 11/08/07 | $5,850.00 |
| 18 | L.E. | 720D | 8395 | 08/07/07 | 08/09/07 | $6,550.00 |
| 19 | P.E. | 890A | 5890 | 10/09/07 | 10/10/07 | $4,850.00 |
| 20 | J.I. | 323A | 5323 | 08/14/07 | 08/17/07 | $4,850.00 |
| 21 | J.J. | 676A | 7676 | 10/09/07 | 10/10/07 | $4,850.00 |
| 22 | G.M. | 031A | 1031 | 10/09/07 | 10/10/07 | $4,850.00 |

In violation of Title 18, United States Code, Sections 1028A and 2.

## COUNTS 23-28
### Aggravated Identity Theft
### (18 U.S.C. §§ 1028A and 2)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant,

**JASPER OGBONNA,**

did without lawful authority, knowingly transfer, possess, and use, means of identification of other persons, that is, physicians' names and UPINs, during in and relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, health care fraud, a violation of 18 U.S.C. §1347:

| Count | Physician | UPIN (last 3 digits) | Purported Use Date | Billed Amount |
|-------|-----------|----------------------|--------------------|---------------|
| 23 | J.I. | 240 | 06/07/07 – 11/02/07 | $86,350.00 |
| 24 | S.Q. | 246 | 07/04/07 | $6,550.00 |
| 25 | L.R. | 763 | 08/09/07 – 08/24/07 | $4,850.00 |
| 26 | J.S. | 274 | 09/07/07 – 12/04/07 | $70,350.00 |
| 27 | M.S. | 175 | 06/07/07 – 08/19/07 | $73,500.00 |
| 28 | S.S. | 059 | 06/27/07 – 10/10/07 | $11,400.00 |

In violation of Title 18, United States Code, Sections 1028A and 2.

**COUNTS 29-33**
**Aggravated Identity Theft**
**(18 U.S.C. §§ 1028A and 2)**

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant,

**ANTHONY NNADI and**
**KEVIN ONWUDIWE,**

did without lawful authority, knowingly transfer, possess, and use, means of identification of other persons, that is, Medicare beneficiaries' names, HICNs, and Social Security numbers, during in and relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, health care fraud, a violation of 18 U.S.C. §1347:

| Count | Medicare Beneficiary | HICN (last 4 digits) | SS#s (last 4 digits) | Purported Service Date | Purported Claim Date | Billed Amount |
|-------|---------------------|----------------------|----------------------|------------------------|----------------------|---------------|
| 29 | L.C. | 661A | 0661 | 11/10/06 | 11/24/06 | $5,150.00 |
| 30 | S.J. | 075A | 8075 | 11/10/06 | 11/24/06 | $4,950.00 |
| 31 | F.P. | 49C1 | 9749 | 11/10/06 | 11/24/06 | $4,950.00 |
| 32 | B.S. | 616A | 3616 | 09/08/06 | 09/25/06 | $3,500.00 |
| 33 | S.W. | 163A | 4163 | 09/08/06 | 09/27/06 | $7,000.00 |

In violation of Title 18, United States Code, Sections 1028A and 2.

## COUNTS 34-35
### Aggravated Identity Theft
### (18 U.S.C. §§ 1028A and 2)

1.      The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant,

### ANTHONY NNADI,

did without lawful authority, knowingly transfer, possess, and use, means of identification of other persons, that is, Medicare beneficiaries' names, HICNs, and Social Security numbers, during in and relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, health care fraud, a violation of 18 U.S.C. §1347:

| Count | Medicare Beneficiary | HICN (last 4 digits) | SS#s (last 4 digits) | Purported Service Date | Purported Claim Date | Billed Amount |
|-------|---------------------|---------------------|---------------------|------------------------|----------------------|---------------|
| 34 | T.A | 452A | 5452 | 08/18/08 | 08/19/08 | $3,390.63 |
| 35 | E.P. | 437A | 5437 | 08/02/07 | 08/06/07 | $3,577.77 |

In violation of Title 18, United States Code, Sections 1028A and 2.

## COUNTS 36-37
### Aggravated Identity Theft
### (18 U.S.C. §§ 1028A and 2)

1.      The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant,

### ANTHONY NNADI and
### KEVIN ONWUDIWE,

did without lawful authority, knowingly transfer, possess, and use, means of identification of other persons, that is, physicians' names and UPINs, during in and relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, health care fraud, a violation of 18 U.S.C. §1347:

| Count | Physician | UPIN (last 3 digits) | Purported Use Date | Billed Amount |
|-------|-----------|---------------------|--------------------|---------------|
| 36 | L.E. | 537 | 08/24/06 – 08/25/06 | $72,700.00 |
| 37 | S.Q. | 246 | 11/07/06 – 11/08/06 | $221,875.00 |

In violation of Title 18, United States Code, Sections 1028A and 2.

## COUNTS 38-41
### Aggravated Identity Theft
### (18 U.S.C. §§ 1028A and 2)

1.     The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates specified as to each count below, in the Eastern District of Texas, and elsewhere, the defendant,

**ANTHONY NNADI,**

did without lawful authority, knowingly transfer, possess, and use, means of identification of other persons, that is, physicians' names and UPINs, during in and relation to a felony enumerated in 18 U.S.C. § 1028A(c), that is, health care fraud, a violation of 18 U.S.C. §1347:

| Count | Physician | UPIN (last 3 digits) | Purported Use Date | Billed Amount |
|-------|-----------|----------------------|---------------------|---------------|
| 38 | J.I. | 240 | 02/25/08 – 02/26/08 | $10,255.05 |
| 39 | L.R. | 763 | 08/02/07 | $3,577.77 |
| 40 | M.S. | 175 | 02/26/08 | $3,418.35 |
| 41 | S.S. | 059 | 10/17/08 | $16,953.15 |

In violation of Title 18, United States Code, Sections 1028A and 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7)

1.     The allegations contained in Counts 1 through 41 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2.     Upon conviction of any violation of Title 18, United State Code, Section 1349, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity", or a conspiracy to commit such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

3.     Upon conviction of any violation of Title 18, United States Code, Section 1347, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to Title 18, United States Code, Section 982(a)(7).

4.     The property which is subject to forfeiture, includes but is not limited to the following:

   a.   A money judgment in the amount of $1,097,077.06, which represents the gross proceeds of the fraud and for which the defendants are jointly and severally liable;

   b.   All funds on deposit at Wesbanco Bank, account number, 0132563711, in the name of Matrix Medical Equipment & Supplies, Inc., or **JASPER OGBONNA**; and

   c.   All funds on deposit at Washington Mutual Bank, account number, 1964772248, in the name of Nicco Medical Services, LLC, or **ANTHONY NNADI**.

5.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference by Title 18, United States Code, Section 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

     a.    Cannot be located upon the exercise of due diligence;

     b.    Has been transferred, or sold to, or deposited with a third party;

     c.    Has been placed beyond the jurisdiction of the Court;

     d.    Has been substantially diminished in value; or

     e.    Has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of **JASPER OGBONNA, ANTHONY NNADI, KEVIN ONWUDIWE, TONY AHI a/k/a "MAYOR", and EMMANUEL GABRIELS a/k/a "TALIBAN" a/k/a "T-BANNY"**.

6.    By virtue of the commission of the offenses alleged in this Indictment, any and all interest the Defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(7).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(7) and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

GRAND JURY FOREPERSON

3-3-2012

Date

JOHN M. BALES
UNITED STATES ATTORNEY

NATHANIEL C. KUMMERFELD
SPECIAL ASSISTANT UNITED STATES ATTORNEY

36

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| vs. | * | CRIMINAL NO. 6:09-CR-85 |
| | * | Judge Schneider |
| JASPER OGBONNA (1), | * | |
| ANTHONY NNADI (2), | * | |
| KEVIN ONWUDIWE (3), | * | |
| TONY AHI a/k/a "MAYOR" (4), and | * | |
| EMMANUEL GABRIELS a/k/a | * | |
| "TALIBAN" a/k/a "T-BANNY" (5) | * | |

## NOTICE OF PENALTY

### COUNT 1

VIOLATION:        Title 18, United States Code, Section 1349
                  Conspiracy to Commit Health Care Fraud

PENALTY:          Imprisonment of not more than ten years, and/or a fine of $250,000
                  to be followed by not more than three (3) years supervised release.

SPECIAL ASSESSMENT:  $100.00 each count

### COUNTS 2-15

VIOLATION:        Title 18, United States Code, Section 1347
                  Health Care Fraud

PENALTY:          Imprisonment of not more than ten years, and/or a fine of $250,000
                  to be followed by not more than three (3) years supervised release.

SPECIAL ASSESSMENT:  $100.00 each count

### COUNTS 16-41

VIOLATION:        Title 18, United States Code, Section 1028A
                  Aggravated Identity Theft

PENALTY:          Imprisonment for not less than two (2) years and/or a fine of
                  $250,000 to be followed by not more than one (1) year supervised
                  release.  This sentence is to run consecutively to any other sentence

imposed.  A person convicted of a violation of this section shall not
be placed on probation.

SPECIAL ASSESSMENT:      $100.00 each count.